## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CYNTHIA LOU HOYNOSKI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 19-1335-MPT |
| | ) |
| ANDREW M. SAUL, | ) |
| ACTING COMMISSIONER OF | ) |
| SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

### **MEMORANDUM**¹

### I. INTRODUCTION

This action arises from the denial of Plaintiff's claim for Social Security benefits. On September 15, 2015, Plaintiff, Cynthia L. Hoynoski, filed for Disability Insurance benefits("DIB") under Title II of the Social Security Act ("the Act").² Plaintiff alleged in her applications that her disability due to severe back pain began on June 1, 2014.³ The claim was denied initially on December 22, 2015, and again upon reconsideration on September 19, 2016.⁴ Thereafter, Plaintiff filed a written request for a hearing before an Administrative Law Judge ("ALJ") on October 25, 2016.⁵ The hearing occurred via video conference on July 19, 2018 with Plaintiff appearing in New Castle,

---

¹ On May 26, 2020, the parties consented to the jurisdiction of a U.S. Magistrate Judge to conduct all proceedings and enter a final judgment. *See* D.I. 18 at 1.
² D.I. 7-2 at 15.
³ *Id.*
⁴ *Id.*
⁵ *Id.*

Delaware and ALJ Anthony Reeves presiding over the meeting from Dover, Delaware.[6]
Testimony was provided at the hearing by Plaintiff and vocational expert, Vanessa J.
Ennis.[7]

On August 29, 2018, ALJ Reeves issued a decision denying Plaintiff's claim.[8]
Plaintiff requested a review of this decision by the Appeals Council,[9] which was denied
on May 13, 2019.[10] Plaintiff then filed a timely appeal with this court.[11] Presently under
consideration are the parties' cross motions for summary judgment.[12] For the reasons
that follow, the court will grant Defendant's motion for summary judgment.

## II. BACKGROUND

Cynthia L. Hoynoski (Plaintiff) was born on October 3, 1957.[13] She has a high
school education.[14] Her past relevant work experience is as a personal banker for
Wells Fargo (1992-2012) and a financial banker for PNC (2014).[15] Plaintiff has not
been employed since 2014, and the date of the onset of her alleged disability is June 1,
2014.[16] Plaintiff suffers from physical and mental impairments including degenerative
disc disease of the lumbar spine, restless leg syndrome, depression, anxiety, and
obesity.[17] The ALJ found that Plaintiff had past relevant work as a customer service

---

[6] *Id.*
[7] *Id.*
[8] *Id.* at 22.
[9] *Id.*
[10] *Id.* at 1-4.
[11] *Id.* at 1-7.
[12] D.I. 11; D.I. 13.
[13] D.I. 7-3 at 2.
[14] *Id.* at 35.
[15] D.I. 7-6 Ex. 8E at 248.
[16] *Id.*
[17] D.I. 7-2 at 15.

2

representative and a financial sales representative.[18]

Plaintiff alleges she is disabled under the Act.[19] To be eligible for disability benefits, a plaintiff must not only demonstrate she is disabled within the meaning of §§ 216(i), 223(d), and 1614(a)(3)(A), but additionally, that she meets the insured status requirements of §§ 216(i) and 223. Plaintiff has sufficiently met the requirements for coverage under §§ 216(i) and 223, and her earnings records show that she has acquired sufficient quarters of coverage through September 30, 2018.[20] The remaining issue is whether Plaintiff is disabled under the Act.

## A. Evidence Presented

Plaintiff has been treated by her family doctor, Dr. Kristine Diehl of Delaware Family Care Associates, from November 2008 to the present for various health issues including restless leg syndrome, Hashimoto's thyroiditis, back pain, allergies, hypertension, and panic attacks.[21] Notably, Dr. Diehl examined Plaintiff in September 2014. Although no physical abnormalities were revealed, Dr. Diehl noted that Plaintiff was unable to work longer hours due to her lumbar disc disease.[22] While under Dr. Diehl's care, Plaintiff saw Dr. Stephen Beneck at Delaware Back Pain & Sports Rehabilitation Centers for her back and leg pain.[23] Dr. Beneck documented full range of motion of Plaintiff's upper extremities, however his examination aggravated her

---

[18] *Id.*
[19] D.I. 12.
[20] D.I. 7-2 at17.
[21] D.I. 7-9 Ex. 5F; D.I. 7-6 Ex. 18E at 304.
[22] *Id.* at 459-460.
[23] D.I. 7-12 Ex. 6F at 631-33.

3

back.[24]  She reported constant lower back pain with intermittent "shooting-type" pain in her legs.[25]  Significant muscle imbalances, anxiety, and depression were listed as possible causes of Plaintiff's pain.  Dr. Beneck recommended physical therapy to increase mobility and decrease pain, and prescribed Relafen and Flexeril.[26]

Plaintiff sought treatment from Dr. Zhongyu Zhang for lower back pain management.[27]  He treated her for pain from 2013 until 2017, mostly with pain medication, Oxycontin and Percocet.[28]  On March 26, 2015, Plaintiff complained that her lower back pain was worsening, but Dr. Zhang did not report any physical changes after his examination.[29]  He ordered an MRI, which was conducted on April 10, 2015 at Diagnostic Imaging Associates and showed multilevel degenerative changes along her lumbar spine, including disc bulges and facet joint hypertrophy, mild central canal stenosis, isolated mild to moderate right neural foraminal stenosis at L3-L3 level, associated endplate bone marrow edema at L3-L4 level, and periarticular bone marrow edema at left L5-S1 facet joint.[30]  Thereafter, on April 23, 2015, Plaintiff complained that her back pain was exacerbated by activity, despite her pain medication.[31]  On May 21, 2015, Plaintiff reported that "pain is managed ok with current pain medication."[32]

---

[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] D.I. 7-7 Ex. 3F at 354.
[28] D.I. 7-7 Ex. 3F; D.I. 7-6 Ex. 18E at 304.
[29] D.I. 7-13 Ex. 7F at 727.
[30] *Id.* at 762.
[31] *Id.* at 729-731.
[32] *Id.* at 731.

4

Medical records indicate that Plaintiff's prescribed medications continued to effectively manage her pain through August 2015.[33] However, on September 10, 2015, Plaintiff reported increased pain which coincided with increased stress from family issues.[34] She also complained that her current medications were too expensive.[35] Initially, Dr. Zhang recommended to change Plaintiff's medications to MS Contin and Oxycocone, but her insurance did not approve, and the existing medications were continued.[36] On October 12, 2015, Plaintiff reported lower back pain and decreased functional mobility.[37] As a result, Dr. Zhang ordered a Functional Capacity Evaluation and advised her to continue with back exercises.[38]

Dan McConnell, a DPT, completed a Functional Capacity Evaluation on December 16, 2015.[39] He found that Plaintiff was "unable to perform at a Sedentary Physical Demand Level" for an eight hour period.[40] He based this conclusion on Plaintiff's inability to perform activity at an occasional or frequent level, her inability to perform positional tolerances, increased fatigue, decreased lower extremity range of motion, and increased pain of the lumbar spine with activity.[41] Plaintiff could do occasional sitting, standing walking, desk-level reaching, overhead reaching, and balancing.[42]

[33] Id. at 736.
[34] Id. at 738.
[35] Id.
[36] Id. at 739.
[37] Id.
[38] Id. at 740.
[39] D.I. 7-13 Ex. 9F at 752.
[40] Id. at 751.
[41] Id.
[42] Id.

5

Thereafter, Dr. Zhang completed a Medical Source Statement form on January 7, 2016 which evaluated Plaintiff's physical capacity.[43] His findings noted that Plaintiff could rarely lift less than ten pounds, could never lift more than ten pounds,[44] could sit for twenty minutes at a time and less than two hours in an eight-hour work day,[45] and could stand for fifteen minutes at a time and for less than two hours out of an eight-hour work day.[46] He found that, even with the option to alternate between sitting and standing, Plaintiff could remain at a work station for less than one hour of an eight-hour work day.[47] Further, she needed to lie down for one to two hours per day and elevate her legs at least to the hip level for thirty minutes to an hour each day, and required five unscheduled daily breaks to use a heating pad.[48] Dr. Zhang opined that Plaintiff's physical limitations included never stooping, squatting, climbing ladders, or reaching, pushing or pulling, and rarely climbing stairs.[49] Plaintiff did not require an assistive device to ambulate and had no side effects from her medication.[50] In conclusion, Dr. Zhang opined that Plaintiff could not perform sedentary work on a full-time basis.[51]

Plaintiff was seen at Christiana Spine Center for her lower back pain on June 13, 2017, where she was examined by Dr. Nancy Kim.[52] Dr. Kim noted that Plaintiff's

---

[43] *Id.* at 747.
[44] *Id.*
[45] *Id.*
[46] *Id.*
[47] *Id.*
[48] *Id.* at 748.
[49] *Id.*
[50] *Id.*
[51] *Id.* at 751.
[52] D.I. 7-15 Ex. 23F at 930.

6

lumbar flexion and extension were limited by fifty percent, her spine stability was normal, and a straight leg raising test produced bilateral back pain.[53] However, her motor strength was fully intact in her lower extremities, with normal reflexes and coordination, her gait was mildly antalgic, she could transferred from sitting to standing without any difficulty and she did not require an assistive device.[54] Plaintiff underwent an MRI of her lumbar spine on June 16, 2017 which revealed changes that evidenced, at most, mild stenosis.[55]

On July 20, 2017, Plaintiff visited a new pain management doctor, Dr. Selina Xing.[56] Her physician's assistant noted that Plaintiff's strength and range of motion were fully intact throughout her lower extremities and her lumbar range was limited secondary to pain.[57] Dr. Xing discontinued Oxycocone and Percocet.[58] On August 1, 2017, Plaintiff tested positive for THC.[59] As a result, Dr. Xing refused further treatment until she tested negative.[60] Although Plaintiff initially denied using THC, during the consult, she "later stated 'it did nothing for me so I didn't pursue it.'"[61] Percocet was continued on August 10, 2017.[62] During this office visit, Plaintiff's gait and balance were noted as normal, and her strength and range of motion were fully intact in her

---

[53] *Id.* at 931.
[54] *Id.*
[55] *Id.* at 935.
[56] D.I. 7-16 Ex. 24F.
[57] *Id.* at 957.
[58] *Id.* at 958.
[59] *Id.* at 952-53.
[60] *Id.*
[61] *Id.*
[62] *Id.* at 947.

lower extremities.[63]

In addition to Plaintiff's treating physicians, at least two State Agency physicians reviewed her medical records and provided opinions. Dr. Darrin Campo reviewed her records on December 20, 2015 and opined that Plaintiff was capable of performing light work, such as, her past employment as a banker.[64] He found she could occasionally lift or carry twenty-five pounds, and could frequently lift or carry ten pounds, as well as stand, walk, or sit for six hours out of an eight-hour work day, and push or pull with no limitations.[65] He further opined that she could frequently climb ramps or stairs, balance, stoop, kneel, crouch and crawl, and occasionally climb ladders.[66]

On June 30, 2017, Dr. R. Titanji, M.D. completed a residual functional capacity (RFC) assessment of Plaintiff and opined that she could occasionally lift or carry twenty pounds and frequently lift or carry ten pounds.[67] He determined that Plaintiff could stand or walk for approximately six hours of an eight-hour work day and sit for six hours of an eight-hour workday, had an unlimited ability to push or pull and frequently balance and kneel.[68] Dr. Titanji concluded that Plaintiff had no manipulative, environmental, visual, or communicative limitations.[69]

On June 4, 2018 Mr. Jeffrey Vari, PT, DPT, MBA completed a medical source statement in which he opined that Plaintiff was unable to perform sedentary work for an

---

[63] *Id.*
[64] D.I. 7-3 Ex. 1A.
[65] *Id.*
[66] *Id.*
[67] D.I. 7-15 Ex. 19F at 920.
[68] *Id.*
[69] *Id.* at 922-23.

8

eight-hour workday and would have difficulty sustaining full-time employment.[70]

## B.    Hearing Testimony

### 1.    Plaintiff's Testimony

At the administrative hearing on July 19, 2018, Plaintiff testified to her background, work history, and alleged disability.[71] She was sixty years old and married.[72] Plaintiff has a high school diploma, and her last employment was in 2014 when she worked as a financial sales representative for PNC Bank for a period of two months.[73] Plaintiff stopped working because her pain was overwhelming.[74] Previously, she worked for twenty-seven years for Wells Fargo until 2012.[75] Plaintiff did not work in 2013 due to her back pain, but despite the pain, she tried to work for PNC in 2014.[76] Plaintiff testified that she had trouble concentrating due to pain.[77]

Plaintiff testified about her back pain and a health condition, Hashimoto's disease, which she claimed caused symptoms including depression, weight gain, and hair loss.[78] Plaintiff described that her pain would "shoot from the bottom of my back up and down my leg."[79] She confirmed that she managed her pain by taking pain medication, Percocet and Oxycontin, and has not proceeded with surgery.[80] She testified that she

---

[70] D.I. 7-18 Ex. 31F at 1127.
[71] D.I. 7-2 at 34-55.
[72] *Id.* at 34-35.
[73] *Id.* at 35.
[74] *Id.* at 35-37.
[75] *Id.*
[76] *Id.*
[77] *Id.* at 15.
[78] *Id.* at 43-44.
[79] *Id.* at 47.
[80] *Id.* at 44-47.

9

changed pain management physicians from Dr. Zhang to Dr. Xing because she "didn't want to take anything anymore" and the drive to Dr. Zhang's office was "getting too hard".[81]

Plaintiff also testified about her pain's effect on her ability to do normal household activities.[82] Although she does laundry and cooks without assistance, she requires help from her husband and grandson to clean.[83] Plaintiff is unable to do activities which require "heavy leaning down" or squatting, such as scrubbing floors.[84] She claims that she deals with depression which has become worse as she ages.[85]

## 2. Vocational Expert's Testimony

Testimony was provided by vocational expert Vanessa J. Ennis.[86] Ms. Ennis is a Vocational and Career Consultant and Trainer for Global Career Consultants.[87] In addition to testifying as an expert, she conducts research and provides training in vocational skills.[88] She classified Plaintiff's past work with Wells Fargo as a customer service representative at a vocational level of 6.[89] According to Ms. Ennis, this position involves skilled work requiring light exertion as performed by Plaintiff.[90] Plaintiff's employment at PNC as a financial sales representative was a vocational level of 7 and

---

[81] *Id.* at 49.
[82] *Id.* at 48.
[83] *Id.*
[84] *Id.*
[85] *Id.* at 53.
[86] *Id.* at 54.
[87] D.I. 7-6 Ex. 21E at 306.
[88] *Id.*
[89] D.I. 12-2 at 55.
[90] *Id.*

10

required light exertion.[91]  Plaintiff performed this position at a sedentary level.[92]  A financial sales representative provides more complex services than a customer service representative.[93]  The vocational expert further testified that the skills Plaintiff possesses are industry-specific and are not transferable to other employment at the light or sedentary level.[94]

The ALJ asked the vocational expert two hypothetical questions.[95]  First, the ALJ described a hypothetical individual who could occasionally lift twenty pounds, frequently lift ten pounds, sit six hours out of an eight-hour work day, stand or walk six hours out of an eight-hour work day, occasionally climb ramps and stairs, occasionally climb ladders, ropes and scaffolds, frequently balance, occasionally stoop, frequently kneel, and occasionally crouch and crawl.[96]  The ALJ asked if a person with these limitations could perform any past work.[97]  Ms. Ennis responded that such a person could perform past work as both a customer sales representative and a financial sales representative because these positions require a light level of work.[98]

The ALJ then asked if a hypothetical individual with the same limitations noted above and who would also be off-task five percent of the workday could perform the past work.[99]  Ms. Ennis again testified that such a hypothetical individual with these

---

[91] *Id.*
[92] *Id.*
[93] *Id.*
[94] *Id.* at 56.
[95] *Id.*
[96] *Id.*
[97] *Id.*
[98] *Id.*
[99] *Id* at 56-57.

limitations could perform her past work and maintain competitive employment even if
she were off-task five percent of the workday.[100] Ms. Ennis also noted that the same
hypothetical individual could maintain competitive employment even if off-task for fifteen
percent of the time, but not if the hypothetical individual were unable to work an eight-
hour day.[101]

## C.  ALJ's Finding of Facts and Conclusions of Law

Based on Plaintiff's application for a period of disability and disability insurance

benefits filed on September 15, 2015, the ALJ found her not disabled under §§ 216(i)

and 223(d) of the Social Security Act.[102] The ALJ's disability decision from the 2018

hearing is summarized as follows:

1.  The claimant meets the insured status requirements of the Social
    Security Act through September 30, 2018.

2.  The claimant has not engaged in substantial gainful activity since
    June 1, 2014, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.  The claimant has the following severe impairments: degenerative
    disc disease of the lumbar spine; restless leg syndrome; and
    obesity (20 CFR 404.1520(e)).

4.  The claimant does not have an impairment or combination of
    impairments that meets or medically equals the severity of one of
    the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1
    (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.  After careful consideration of the entire record, the undersigned
    finds that the claimant has the residual functional capacity to
    perform light work as defined in 20 CFR 404.1576(b) except could
    occasionally lift 20 pounds and frequently lift 10 pounds; sit 6 hours

---

[100] *Id.*

[101] *Id.* at 58.

[102] *Id.* at 15.

out of an 8-hour workday; stand or walk 6 hours out of an 8-hour
workday; occasionally climb ramps, stairs, ladders, ropes, and
scaffolds; frequently balance and kneel; and occasionally stoop,
crouch, and crawl.

6.   The claimant is capable of performing past relevant work as a
customer service representative and financial sales representative.
This work does not require the performance of work-related
activities precluded by the claimant's residual functional capacity
(20 CFR 404.1565).

7.   The claimant has not been under a disability, as defined in the
Social Security Act, from June 1, 2014, through the date of this
decision (20 CFR 404.1520(f)).[103]

## III.   STANDARD OF REVIEW

### A.   Motion for Summary Judgment

Both parties in this case moved for summary judgment.[104] When determining the

appropriateness of summary judgment, the court must "review the record as a whole,

'draw[ing] all reasonable inferences in favor of the nonmoving party[,]' but [refraining

from] weighing the evidence of making credibility determinations.[105] Summary judgment

is appropriate when there is no genuine issue as to any material fact and the movant is

entitled to judgment as a matter of law.[106]

This standard remains the same even when there are cross-motions for summary

judgment.[107] Cross-motions for summary judgment:

---

[103] D.I. 7-2 at 17-22.

[104] D.I. 11; D.I. 13.

[105] *Reeves v. Sanderson Plumbing, Prods., Inc.*, 530 U.S. 133, 150 (2000).

[106] *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005) (quoting FED. R. CIV.
P. 56(c)).

[107] *Appelmans v. City of Philadelphia*, 826 F.2d 214, 216 (3d. Cir. 1987).

13

> are no more than a claim by each side that it alone is entitled to summary
> judgment, and the making of such inherently contradictory claims does not
> constitute an agreement that if one is rejected the other is necessarily
> justified or that the losing party waives judicial consideration and
> determination whether genuine issues of material fact exist.[108]

"The filing of cross-motions for summary judgment does not require the court to grant summary judgment for either party."[109]

## B.    Court's Review of the ALJ's Findings

Section 405(g) sets forth this court's standard of review of an ALJ's decision. The court may reverse the Commissioner's final determination only if the ALJ did not apply the proper legal standards, or if the record did not include substantial evidence to support the ALJ's decision. The Commissioner's factual decisions are upheld if supported by substantial evidence. Substantial evidence means more than a "mere scintilla" of evidence, but is not as high of a burden as a preponderance of the evidence.[110] The United States Supreme Court found substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[111]

In determining whether substantial evidence supports the Commissioner's findings, the court may not undertake a de novo review of the Commissioner's decision and may not re-weigh the evidence of record.[112] The court's review is limited to the

---

[108] *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968).
[109] *Krupa v. New Castle County*, 732 F. Supp. 497, 505 (D. Del. 1990).
[110] *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).
[111] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).
[112] *Monsour*, 806 F.2d at 1190.

14

evidence that was actually presented to the ALJ.[113]  The Third Circuit has explained that

a:

single piece of evidence will not satisfy the substantiality test if the
[Commissioner] ignores, or fails to resolve, a conflict created by
countervailing evidence.  Nor is evidence substantial if it is overwhelmed
by other evidence, particularly certain types of evidence (e.g., evidence
offered by treating physicians) or if it really constitutes not evidence but
mere conclusion.[114]

Thus, the proper determination is whether the Commissioner's conclusion was

reasonable, and not whether the court would have made the same determination.[115]

The court must defer to the ALJ and affirm the Commissioner's decision so long as it is

supported by substantial evidence, even if the court would have decided the case

differently.[116]

Where "review of an administrative determination is sought, the agency's decision

cannot be affirmed on a ground other than that actually relied upon by the agency in

making its decision."[117]  In *Securities & Exchange Commission v. Chenery Corp.*, the

Supreme Court found that a "reviewing court, in dealing with a determination or

judgment which an administrative agency alone is authorized to make, must judge the

propriety of such action solely by the grounds invoked by the agency.  If those grounds

are inadequate or improper, the court is powerless to affirm the administrative action by

---

[113] *Matthews v. Apfel*, 239 F.3d 589, 593-95 (3d Cir. 2001).

[114] *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).

[115] *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).

[116] *Monsour*, 806 F.2d at 1190-91.

[117] *Hansford v. Astrue*, 805 F. Supp. 2d 140, 144-45 (W.D. Pa. 2011).

substituting what it considers to be a more adequate or proper basis."[118] The Third
Circuit has recognized the applicability of this finding in the Social Security disability
context.[119] Thus, this court's review is limited to the four corners of the ALJ's
decision.[120]

## C.  ALJ'S Disability Determination Standard

The Supplemental Social Security Income (SSI) program was enacted in 1972 to
assist "individuals who have attained the age of 65 or are blind or disabled" by setting a
minimum income level for qualified individuals.[121] In order to establish SSI eligibility, a
claimant bears the burden of proving that she is unable to "engage in any substantial
gainful activity by reason of any medically determinable physical or mental impairment
which can be expected to result in death or which has lasted or can be expected to last
for a continuous period of or not less than twelve months."[122] Moreover, "the physical or
mental impairment or impairments must be of such severity that the claimant is not only
unable to do [her] previous work but cannot, considering [her] age, education, and work
experience, engage in any other kind of substantial gainful work which exists in
significant numbers in the national economy."[123] The definition of "physical or mental
impairment" is an impairment that results from anatomical, physiological, or

_____

[118] *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

[119] *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001).

[120] *Cefalu v. Barnhart*, 387 F. Supp. 2d 486, 491 (W.D. Pa. 2005).

[121] *Sullivan v. Zebley*, 493 U.S. 521, 524 (1990) (citing 42 U.S.C. § 1381 (1982
ed.)).

[122] 42 U.S.C. § 423(d)(1)(A).

[123] 42 U.S.C. § 423(d)(2)(A).

16

psychological abnormalities which are evidenced by medically acceptable clinical and

laboratory diagnostic techniques.[124]

## 1. Five-Step Test

The Social Security Administration uses a five-step sequential claim evaluation

process to determine whether an individual is disabled.[125]

> In step one, the Commissioner must determine whether the
> claimant is currently engaging in substantial gainful activity. If a claimant
> is found to be engaged in substantial activity, the disability claim will be
> denied.
> In step two, the Commissioner must determine whether the
> claimant is suffering from a severe impairment. If the claimant fails to
> show that her impairments are "severe", she is ineligible for disability
> benefits. In step three, the Commissioner compares the medical
> evidence of the claimant's impairment to a list of impairments presumed
> severe enough to preclude any gainful work. If a claimant does not
> suffer from a listed impairment or its equivalent, the analysis proceeds to
> steps four and five. Step four requires the ALJ to consider whether the
> claimant retains the residual functional capacity to perform her past
> relevant work. The claimant bears the burden of demonstrating an
> inability to return to her past relevant work. If the claimant is unable to
> resume her former occupation, the evaluation moves to the final step.
> At this stage, the burden of production shifts to the
> Commissioner, who must demonstrate the claimant is capable of
> performing other available work in order to deny a claim of disability.
> The ALJ must show there are other jobs existing in significant numbers
> in the national economy which the claimant can perform, consistent with
> her medical impairments, age education, past work experience, and
> residual functional capacity. The ALJ must analyze the cumulative
> effect of all the claimant's impairments in determining whether she is
> capable of performing work and is not disabled. The ALJ will often seek
> the assistance of a vocational expert at this fifth step.[126]

If the ALJ determines that a claimant is disabled at any step in the sequence, the

---

[124] 42 U.S.C. § 423(d)(3).

[125] 20 CFR § 416.920(a); *see also Plummer v. Apfel*, 186 F.3d 422 (3d Cir. 1999).

[126] *Plummer*, 186 F.3d at 427.

17

analysis ends.[127]

## 2. Weight Afforded Treating Physicians

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight."[128] For a treating physician's report to be given controlling weight, however, the opinion on the nature and severity of a claimant's impairment should be well supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence on record.[129]

The ALJ must consider medical findings supporting the treating physician's opinion that the claimant is disabled.[130] If the ALJ rejects the treating physician's assessment, he may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence."[131] If an opinion is rejected, then the ALJ must provide an explanation for the rejection. The explanation does not need to be exhaustive because usually a sentence or short paragraph will be sufficient.[132]

Importantly, a statement by a treating source that a claimant is "disabled" is not a medical opinion since this issue is reserved to the ALJ because it is a finding that is

---

[127] 20 CFR § 404.1520(a).

[128] *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).

[129] *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001).

[130] *Morales*, 225 F.3d at 317 (citing *Plummer*, 186 F.3d at 429).

[131] *Plummer*, 186 F.3d at 429.

[132] *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).

18

dispositive of the case.[133]  Therefore, only the ALJ can make a disability determination.

### 3.  Evaluation of Subjective Accounts of Pain[134]

Statements about the symptoms alone never establish the existence of any impairment or disability.[135]  The Social Security Administration uses a two-step process to evaluate the existence and severity of symptoms.

#### a.  Step One, Existence of Pain

First, the ALJ must find a medically determinable impairment - proven with medically acceptable clinical and laboratory diagnostic data - that could reasonably be expected to produce the claimant's symptoms.  Otherwise, the ALJ cannot find an applicant disabled, no matter how genuine the symptoms appear to be.

This step does not consider the intensity, persistence, and limiting effects of the symptoms on the claimant: it only verifies whether a medical condition exists that could objectively cause the existence of the symptom.

Analysis stops at this step where the objectively determinable impairment meets or medically equals one listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, because the claimant is considered disabled *per se.*

#### b.  Step Two, Severity of Pain

At step two, the ALJ must determine the extent to which the symptoms limit the claimant's ability to do basic work activities.  At this step, the ALJ must consider the

---

[133] *See* 20 CFR § 416.927 (e)(1).

[134] *See* 20 CFR. §§ 416.928-29; *see also* SSR 96-7p.

[135] A symptom is an individual's own description of physical or mental impairments such as pain, fatigue, shortness of breath and other complaints. *See* SSR 96-7p.

entire record, including medical signs, laboratory findings, the claimant's statements about symptoms, any other information provided by treating or examining physicians and psychologists, and any other relevant evidence in the record, such as the claimant's account of how the symptoms affect her activities of daily living and ability to work.[136]

Where more information is needed to assess a claimant's credibility, the ALJ must make every reasonable effort to obtain available information that would shed light on this issue. Therefore, the ALJ must consider the following factors relevant to symptoms, only when such additional information is needed:

(i) The applicants' account of daily activities;

(ii) The location, duration, frequency, and intensity of pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication the applicant takes or has taken to alleviate pain or other symptoms;

(v) Treatment, other than medication, the applicant receives or has received for relief of pain or other symptoms;

(vi) Any measures the applicant uses or has used to relieve pain or other symptoms (e.g., lying flat, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning functional limitations and restrictions due to pain or

---

[136] 20 CFR § 404.1529.

other symptoms.[137]

### 4.    Factors in Evaluating Credibility[138]

A claimant's statements and reports from medical sources and other persons with
regard to the seven factors, noted above, along with any other relevant information in
the record, provide the ALJ with an overview of the subjective complaints, and are
elements to the determination of credibility.

Consistency with the record, particularly medical findings, supports a claimant's
credibility.  Since the effects of symptoms can often be clinically observed, when
present, they tend to lend credibility to a claimant's allegations.  Therefore, the
adjudicator should review and consider any available objective medical evidence
concerning the intensity and persistence of pain or other symptoms in evaluating the
claimant's statements.

Persistent attempts to obtain pain relief, increasing medications, trials of different
types of treatment, referrals to specialists, or changing treatment sources may indicate
that the symptoms are a source of distress and generally support a claimant's
allegations.  An applicant's claims, however, may be less credible if the level or
frequency of treatment is inconsistent with the level of complaints, or if the medical
reports or records show noncompliance with prescribed treatment.

Findings of fact by state agency medical and psychological consultants and other
physicians and psychologists regarding the existence and severity of impairments and

---

[137] 20 CFR § 404.1529.
[138] SSR 16-3p.

21

symptoms, and opinions of non-examining physicians and psychologists are also part of the analysis. Such opinions are not given controlling weight. However, the ALJ, although not bound by such findings, may not ignore them and must explain the weight afforded those opinions in his decision.

Credibility is one element in determining disability. The ALJ must apply his finding on credibility in step two of the five-step disability determination process, and may use it at each subsequent step.

The decision must clearly explain – provide sufficiently specific reasons based on the record – to the claimant and any subsequent reviewers, the weight afforded to the claimant's statements and the reasons therefore.

The law recognizes that the claimant's work history should be considered when evaluating the credibility of her testimony or statements.[139] A claimant's testimony is accorded substantial credibility when she has a long work history, which demonstrates it is unlikely that, absent pain, she would have ended employment.[140]

## 5. Medical Expert Testimony

The onset date of disability is determined from the medical records and reports and other similar evidence, which requires the ALJ to apply informed judgment.[141] "At the hearing , the administrative law judge (ALJ) should call on the services of a medical

---

[139] 20 C.F.R. § 404.1529(a)(3).

[140] *Podedworny v. Harris*, 745 F.2d 210, 217 (3d Cir. 1984) (citing *Taybron v. Harris*, 667 F.2d 412, 415 n.6 (3d Cir. 1981)). In *Podedworny*, the claimant worked for thirty-two years as a crane operator for one company. He had a ninth grade education and left his employment after the company physicians determined that his symptoms of dizziness and blurred vision prevented him from safely performing his job.

[141] SSR 83-20.

advisor when onset must be inferred."[142]

## IV.  DISCUSSION

### A.  Parties' Contentions

Plaintiff argues that the ALJ erred by failing to apply treating source opinions with the appropriate weight relative to other opinions, in accordance with agency policy and Third Circuit precedent.[143]  As a result, Plaintiff contends that the credibility assessment was deficient.[144]  She further maintains that the credibility assessment was deficient for failing to consider her stellar work history of more than twenty-five years of substantial gainful employment.[145]

Alternatively, Defendant argues that substantial evidence supports the ALJ's evaluation of the evidence and Plaintiff's subjective complaints.[146]  Further, the ALJ provided explanations supported by record evidence regarding the bases for his limited weight applied to certain sources, including treating physicians, such as, Dr. Zhang.[147]  Defendant also contends that the ALJ was reasonable in affording great weight to the state agency decisions because they were most consistent with the overall record evidence.[148]  Although there was later-submitted evidence to which the state agency physicians did not have access, this has no meaningful effect, since the ALJ reviewed

---

[142] Id.
[143] D.I. 12.
[144] Id.
[145] Id.
[146] D.I. 14.
[147] Id.
[148] Id.

23

their opinions in conjunction with all of the evidence.[149]

## B. Disability Analysis

Title II of the Social Security Act, 42 U.S.C. § 423(a)(I)(d), "provides for the payment of insurance benefits" to those who contributed to the program and suffer from a physical or mental disability.[150] To qualify for disability insurance benefits, a claimant must establish she was disabled prior to the date she was last insured.[151] A "disability" is defined as the inability to do any substantial gainful activity due to any medically determinable physical or mental impairment, which either could result in death or has lasted or can be expected to last for a continuous period of at least 12 months.[152] To be disabled, the severity of the impairment must prevent return to previous work, and considering age, education, and work experience, restrict "any other kind of substantial gainful work which exists in the national economy."[153]

As noted previously, in determining whether a person is disabled, the Commissioner is required to perform a five-step sequential analysis.[154] If a finding of disability or non-disability can be made at any point in the sequential process, the Commissioner does not review the claim further.[155] When a claimant's impairment or its

---

[149] Id.

[150] Bowen, 482 U.S. at 140.

[151] 20 CFR § 404.131.

[152] 42 U.S.C. §§ 423(d)(I)(A), 1382(c)(a)(3).

[153] 42 U.S.C. § 423(d)(2)(A); Barnhart v. Thomas, 540 U.S. 20, 21-22 (2003).

[154] 20 CFR § 404.1520; see also Plummer v. Apfel, 186 F.3d 422, 427-28 (3d Cir.1999).

[155] 20 CFR § 404.1520(a)(4).

24

their opinions in conjunction with all of the evidence.[149]

## B. Disability Analysis

Title II of the Social Security Act, 42 U.S.C. § 423(a)(l)(d), "provides for the payment of insurance benefits" to those who contributed to the program and suffer from a physical or mental disability.[150] To qualify for disability insurance benefits, a claimant must establish she was disabled prior to the date she was last insured.[151] A "disability" is defined as the inability to do any substantial gainful activity due to any medically determinable physical or mental impairment, which either could result in death or has lasted or can be expected to last for a continuous period of at least 12 months.[152] To be disabled, the severity of the impairment must prevent return to previous work, and considering age, education, and work experience, restrict "any other kind of substantial gainful work which exists in the national economy."[153]

As noted previously, in determining whether a person is disabled, the Commissioner is required to perform a five-step sequential analysis.[154] If a finding of disability or non-disability can be made at any point in the sequential process, the Commissioner does not review the claim further.[155] When a claimant's impairment or its

---

[149] *Id.*

[150] *Bowen*, 482 U.S. at 140.

[151] 20 CFR § 404.131.

[152] 42 U.S.C. §§ 423(d)(l)(A), 1382(c)(a)(3).

[153] 42 U.S.C. § 423(d)(2)(A); *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003).

[154] 20 CFR § 404.1520; *see also Plummer v. Apfel*, 186 F.3d 422, 427-28 (3d Cir.1999).

[155] 20 CFR § 404.1520(a)(4).

24

equivalent matches an impairment in the listing, the claimant is presumed disabled.[156] If a claimant's impairments, either singularly or in combination, fail to meet or medically equal any listing, the analysis continues.[157] In the analysis through the five steps, the Commissioner determines whether the claimant retains the RFC to perform her past relevant work.[158] A claimant's RFC is "that which an individual is still able to do despite the limitations caused by [her] impairment(s)."[159]

If the claimant is unable to return to her past relevant work, the Commissioner then determines whether the claimant's impairments preclude adjusting to any other available work.[160] At this final step, the burden is on the Commissioner to show the claimant is capable of performing other available work existing in significant national numbers and consistent with the claimant's medical impairments, age, education, past work experience, and RFC before denying disability benefits.[161] In making this determination, the ALJ must analyze the cumulative effect of all the claimant's impairments, often with the assistance of a vocational expert.

### 1. Weight Accorded to Medical Opinion Evidence

It is the exclusive responsibility of the ALJ to weigh the evidence in the record as a whole in making a disability decision.[162] The evidence presented to the ALJ may

---

[156] 20 CFR § 404.1520(a)(4)(iii)

[157] 20 CFR § 404.1520(e).

[158] 20 CFR. § 404.1520(a)(4)(iv); *see also Plummer*, 186 F.3d at 428.

[159] *Fargnoli*, 247 F.3d at 40.

[160] 20 CFR § 404.1520(g) (mandating finds of non-disability when claimant can adjust to other work); *see also Plummer*, 186 F.3d at 428.

[161] *Id.*

[162] *See* 20 CFR § 404.1527(e)(2).

contain differing medical opinions from both treating and non-treating physicians, as well as other testimony.[163] Normally, the evidence presented by the treating physician is given controlling weight as that individual may be most acquainted with the claimant's medical history. However, in circumstances where the treating physician's opinion is not consistent with the record as a whole or is not well supported by "medically acceptable clinical and laboratory diagnostic techniques", an ALJ may reasonably accord little weight to the treating physician's opinion.[164] Plaintiff herein argues that the opinions of her treating physicians establish greater limitations than set forth in the RFC, and thus, the ALJ's evaluation of the opinion evidence is insufficient as a matter of law. This court finds that the proper level of deference was given to Plaintiff's treating physicians and the ALJ's evaluation of the evidence was appropriate.

### a. Treating Physicians

In his analysis, the ALJ considered the assessment provided by Plaintiff's pain management doctor, Dr. Zhang, as well as, the Functional Capacity Evaluations of Dan McConnell, DPT and Jeffrey Vari. Additionally, the ALJ considered the opinions of state agency consultants Drs. Campo and Titanji, who reviewed plaintiff's medical history in December 2015 and June 2017, respectively.

### i. Pain Management Specialist - Dr. Zhongyu Zhang, M.D.

The ALJ noted Dr. Zhang's diagnoses of restless leg syndrome, lumbar spine degenerative disc disease, and morbid obesity. However, the physical exam

---

[163] *See* 20 CFR § 404.1512.
[164] *See* 20 CFR § 404.1527(c).

26

accompanying his findings was "within normal limits" with full range of motion, no reported pain in her muscles or joints, and no paresthesias or numbness.[165] Dr. Zhang noted that Plaintiff's pain was managed with medications. Despite such findings, he opined on January 7, 2016 that she would be unable to perform full-time work on a regular and continuing basis.[166] The ALJ thus appropriately afforded Dr. Zhang's opinion limited weight because his limitations provided for a less than a sedentary RFC which is inconsistent with the record.[167]

### ii. Dan McConnell, DPT

Mr. McConnell determined that Plaintiff was unable to perform at a sedentary level, based on the following: her inability to perform activity at an occasional or frequent level, her increased fatigue, decreased lower extremity range of motion, and increased lumbar spine pain with activity.[168] He further concluded that Plaintiff could not frequently perform any material handling activities.[169] The ALJ afforded Mr. McConnell's opinion limited weight because his restrictions determined a less than sedentary RFC, and were inconsistent with the medical evidence demonstrating full range of motion, normal gait, and pain managed with medication. Therefore, the ALJ reasonably afforded his opinion limited weight.

---

[165] D.I. 7-2 at 19-22.
[166] Id.
[167] Id.
[168] Id.
[169] Id.

27

### iii. Jeffrey Vari

Mr. Vari opined that the claimant would have difficulty sustaining full-time gainful employment even in an occupation with sedentary physical demands.[170] The ALJ properly attributed limited weight to this opinion because it was inconsistent with the record evidence.

### b.  State Agency Consultants

The ALJ properly gave the non-examining state agency consultants' assessments great weight in their determinations of Plaintiff's physical limitations.  State agency consultants have a high level of understanding of the Social Security disability program and review all available record evidence when forming their opinions.  Dr. Campo found that Plaintiff was capable of employment at a light level of exertion and able to frequently climb raps, climb stairs, balance, stoop, kneel, and crouch and crawl.[171]  He concluded that she could also occasionally climb ladders, ropes, or scaffolds.[172]  His assessment was confirmed by Michael H. Borek, D.O. on June 28, 2016.  Another state agency assessment was conducted by Dr. Titanji who determined that the claimant was capable of a light level of exertion.[173]  These assessments were given great weight by the ALJ because of their consistency with the evidence of record, specifically Plaintiff's conservative management of her pain symptoms through medication only, a continuously observed normal gait, intact balance, and absence of any need for an

---

[170] *Id.*
[171] *Id.* at 20-21.
[172] *Id.*
[173] *Id.*

28

assistive device to ambulate.[174] The ALJ considered the recent medical evidence provided after the consultant's assessments, which primarily showed similar examinations and treatments when the state agency assessments were made. Therefore, the weight afforded the state agency assessments is not inconsistent with the more recent records evidence.

## 2. The ALJ's RFC Assessment

Plaintiff alleges that the ALJ's RFC finding is insufficient as a matter of law because "medical opinions of record establish far greater physical limitations than found by the ALJ".[175]

An RFC is an individual's ability to perform in a work setting despite impairments and limitations.[176] In making this finding, the ALJ must consider all of the claimant's impairments, including those that are non-severe. When the ALJ weighs the credibility of the evidence, he must indicate the evidence which he rejects and his reason(s) for discounting it.[177]

In the instant matter, the ALJ found Plaintiff capable of performing past relevant work as both a customer service representative and a financial sales representative, and such employment does not require the performance of work-related activities precluded by her RFC.[178] Although the ALJ found that Plaintiff's complaints could

---

[174] *Id.*

[175] D.I. 12.

[176] 20 CFR § 404.1545.

[177] *Plummer*, 186 F.3d at 429.

[178] D.I. 7-2 at 20.

29

reasonably cause her alleged symptoms, her subjective reports of the intensity, persistence and limiting effects were inconsistent with the record.[179]  Plaintiff claims that her severe back pain prevents employment, but her treatment records reveal that her back pain was stable and her treatment was limited to medication.[180]  The updated MRI findings show mild central canal stenosis, which the ALJ found to be inconsistent with Plaintiff's complaints.[181]

The ALJ considered the state agency assessments, the objective evidence of degenerative disc disease, the subjective statements by the Plaintiff which were inconsistent with the stable examination findings, and her conservative pain management through prescription medications.[182]  Thus, the ALJ had substantial evidence to decide Plaintiff's RFC and properly concluded that she would be able to perform past work.

## V.   CONCLUSION

Therefore, Plaintiff's motion for summary judgment (D.I. 11) is denied; and Defendant's motion for summary judgment (D.I. 13) is granted.  An order consistent with the findings in this Memorandum shall follow.

Date:  August 5, 2020

_____
Chief Magistrate Judge Mary Pat Thynge

---

[179] Id.

[180] Id. See supra Section (III)(C)(4) (discussing that consistency with the medical findings in the record supports a claimant's credibility of her subjective complaints, and increasing medications, as well as, trying different treatments also augments a claimant's credibility).

[181] Id.

[182] Id. at 21.

30